AUGUST RINELLA, Executor, Appellant, v. JAMES L. FAYLOR, Appellee.

**FRAUD:** Fraudulent Representations—Right to Rely. A vendor who, of his own personal knowledge, distinctly represents to a purchaser

that a designated tract of land contains a given number of acres, and that only a trifling part thereof is within the boundaries of a lake, will not, in case the representation is false, be permitted to say that the vendor had no right to rely on the representation *because the purchaser was present on the land when the representations were made.*

**FRAUD: Fraudulent Representations—Nature of Ownership.** One who 2 is guilty of fraudulent representations in the disposal of land may not escape responsibility for his fraud on the weak cry that he held the land simply under a contract for its purchase.

**BILLS AND NOTES: Fraud Available Against Transferee.** The maker 3 of a negotiable promissory note, when sued thereon by a transferee, must prevail, on a record showing fraud in the inception of the note, *with no testimony that the plaintiff transferee was, in fact, a holder in due course.*

**TRIAL: Continuance—Conclusion Affidavit.** Under an admission that 4 an absent witness would, if present, testify to facts properly stated in an affidavit for a continuance, the following statements are properly excluded on the trial as *conclusions:*
1. ''That he [the witness] personally knows that the transferee of a negotiable promissory note never had any knowledge of the facts relating to any fraud in the note.''
2. ''That he [the witness] sold said note in good faith, and without notice of any claim or facts that would prevent the transferee from becoming a bona-fide owner for value.''
3. ''That there was no fraud in the note.''

*Appeal from Harrison District Court.*—TRUMAN S. STEVENS, Judge.

JANUARY 11, 1921.

SUIT on promissory note. Fraud was pleaded as a defense, but plaintiff claimed to be a holder in due course. Verdict of jury, finding for defendant. Plaintiff appeals.—*Affirmed.*

*J. S. Dewell,* for appellant.

*C. W. Kellogg,* for appellee.

DE GRAFF, J.—This action is on a note in words and figures to wit:

"Windom, Minn., October 15th, 1913                $960.70

**1. FRAUD: fraudulent representations: right to rely.**

"On March 1, 1915, I promise to pay to the order of James Watts

"Nine hundred sixty & 70/100 Dollars.

"For value received with interest at the rate of 5½% per annum, payable annually at the First National Bank of Windom, Windom, Minn., Interest from March 1st, 1914.

"James L. Faylor.

(Indorsed)

"James Watts.

"G. O. Hartley:"

The defendant, in his answer, admitted the execution of the note, but alleged that the said note was obtained by the payee James Watts through fraud and misrepresentation, and that, by reason thereof, there was a failure of consideration. Plaintiff, by way of reply, denied generally all allegations of the answer relating to the fraud charged, and further alleged that he was a purchaser in good faith, for valuable consideration, before maturity, and without notice of any defect in the title thereto.

It appears from the record that, simultaneously with the making of the note, a written contract, signed by the parties, was executed, and, by the terms thereof, Watts agreed to sell and convey to Faylor, by assignment of contract with Olie Simmonson, certain real estate situated in the county of Cottonwood and state of Minnesota, to wit:

"Lots One and Two (1 and 2) in the north half of the southwest quarter of Section thirteen (13) and the meandered lands in connection therewith in Township one hundred six (106) north of Range thirty-eight (38) west, containing 250 and 75/100 acres."

The purchase price of said premises was $18,750. The note in question represented the balance due after certain liens were assumed by vendee, and credit given for an Iowa farm at a stipulated exchange value. The fraud alleged is predicated on certain statements and representations made by the vendor, Watts, to Faylor, relative to the number of acres of "deeded" land contained in the tract. The evidence discloses without

serious dispute that Watts took Faylor to the Minnesota land, and, at that time and place, told Faylor that all of the land was in Lots 1 and 2, except an acre or two; that there were 250 acres of deeded land in the tract, excepting an acre or two which ran down to the lake; that none of it was in the lake bed; and that all of the land lay on the high bank. Watts also told Faylor, at the time, that there was a lake on the northeast corner, but the latter did not see the lake. After the two men had walked across one corner of the land, Watts said he was tired, and did not care to go or walk further. Subsequently to this visit, Faylor learned from a third party that the tract did not contain the number of acres stated by Watts; and he employed the county surveyor of the county where the land was situated, to make a survey and plat the real estate in question. This survey discloses that there are 150.75 acres of deeded land lying outside of the lake.

In the disposition of this case on appeal, two primary questions must be answered:

1. Do the facts, as pleaded and proved, constitute fraud?

2. Was plaintiff's decedent, Anthony Rinella, a holder in due course of the note executed by Faylor?

I. It is earnestly contended by appellant that, since the defendant was upon the land, and had the opportunity afforded him to ascertain the matters upon which fraud is pleaded, he is now precluded by his own negligence from rescinding the contract.

Fraud may not be predicated on the failure of the vendor to disclose facts which are equally as open to the vendee as to the vendor; but, in the instant case, the means of knowledge respecting the matters falsely represented were not equally open to the contracting parties. It is true, Faylor was informed as to the existence of the lake, but he was also told that it covered about one or two acres of the 250-acre tract. It is very questionable whether reasonable diligence on the part of Faylor to ascertain the truth of this fact would have availed anything, since he had no knowledge or information concerning the boundary lines or the quantum of land, other than what he derived from his informant, Watts. The latter was affirmatively encouraging a belief on the part of the purchaser as to the number of acres and the extent of water on the land; and, since the

vendor had the superior opportunity and knowledge, the vendee, Faylor, had the right to rely upon material representations. While a person has no right to rely upon representations by a vendor that are mere matters of opinion, he does have a right to rely on material representations of fact, when the vendor occupies the vantage ground of knowledge concerning the subject-matter of the contract. If Watts in fact knew the number of acres of deeded land and the number of acres covered by water, it was his duty to state the truth, if he essayed to speak at all upon the subject. In *Riley v. Bell*, 120 Iowa 618, it is said:

"Here the charge is that he [defendant] claimed to have personal knowledge to the effect that the title was perfect. * * * Under the circumstances here presented, we think it does not lie in the mouth of one charged with such a fraud [that the title was clear of incumbrance] to say that an examination of the county records would have disclosed his untruth, and laid bare his attempted fraud. Where one is shown to have made statements of the character here in question, the law presumes that he intends that the same shall be relied upon. If the party to whom they are made does in good faith rely thereon, he may recover, notwithstanding it may appear that opportunities were open to him to ascertain the truth by investigation and examination. As applied to a case such as we have before us, it is well settled that one who, to advance his own interests, falsely asserts the existence of a state of facts, knowing the other party to be ignorant, cannot complain if he is believed."

See, also, *Davis v. Central Land Co.*, 162 Iowa 269.

It is further contended by appellant that the testimony relating to the representations made by Watts was incompetent, for the reason that Watts was not selling the land to Faylor, 2. FRAUD: fraudulent representations: nature of ownership. but was assigning a contract under which said lands were to be conveyed. We cannot accept this view of the transaction. To make such a distinction would be "to distinguish and divide a hair 'twixt south and southwest side." Faylor was purchasing real estate evidenced at the time by an existing contract of sale in the possession and ownership of Watts, and later was to receive deed to the land described in the contract.

We have carefully examined the cases cited by appellant on

the proposition that "there was no fraud." They are clearly distinguishable on the facts from the case at bar. Analogy in fraud cases never walks on all fours. It is not the definition of fraud, but the application of the definition to the facts in each case, that causes an apparent variance in the conclusions reached. Fraud is a conclusion from the facts stated.

We determine that the representations made by Watts constituted fraud, entitling Faylor to rescind.

II. Was plaintiff's decedent, as to the note in suit, a holder in due course? Negotiability is the characteristic of a written instrument which contains certain essentials, and which, if transferred under certain conditions, gives to the holder thereof a title free from all pre-existing equities and defenses. The note in question is negotiable in form, but the original payee did not hold an enforcible instrument, by reason of fraud in its inception. Section 3060-a59, Code Supplement, 1913 (Iowa Negotiable Instruments Act) provides:

3. BILLS AND NOTES: fraud available against transferee.

"Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

See *In re Estate of Philpott,* 169 Iowa 555.

The original plaintiff, Rinella, took the instrument, which was complete and regular upon its face, before maturity and for value. The pertinent and controlling inquiry is: Did he, at the time the note was negotiated to him, have notice of any infirmity in the instrument or defect in the title of the person negotiating it? The plaintiff had the burden of proving, by a preponderance of the evidence, that he was an innocent purchaser of the note; and, unless he so proves, he must fail. If he fails, then the defense of fraud would be as available against him as against the original payee. Section 3060-a55, Code Supplement, 1913. Not a line or syllable of competent testimony is offered by the plaintiff on this proposition. The deposition of Anthony Rinella, decedent, was taken and read upon the trial, but nowhere therein does he intimate that he had no knowledge of the fraud perpetrated on the defendant, Faylor, in the sale of the land.

At the time this cause was called for trial, plaintiff filed a motion for continuance, based on the absence of a material witness, E. C. Ladd. The defendant admitted that the said witness, if present, would testify to certain facts, as distinguished from legal conclusions, stated in said motion. Whereupon, the motion was overruled by the court.

4. TRIAL: continuance: conclusion affidavit.

Complaint is made by appellant and error is assigned on the ruling of the court in excluding parts of the proferred testimony of the absent witness. A few excerpts from the record will be sufficient to show the character of the statements excluded:

"That he [E. C. Ladd] would, if present, testify that he personally knows that said Anthony Rinella never at any time had any knowledge of the facts relating to the alleged fraudulent transaction set out or claimed in defendant's answer."

"That he [E. C. Ladd] sold said note in good faith and without notice of any claim of fraud or other facts that would prevent him [Anthony Rinella] from becoming a bona-fide purchaser for value."

"That he [E. C. Ladd] is acquainted with all the facts relative to the giving of said note by the defendant, James Faylor, and that there was no fraud in connection with the same."

This offered testimony and other statements of similar import were clearly legal conclusions, and the objections made were properly sustained.

Certain instructions were requested by plaintiff; but the same were properly refused, as the subject-matter of the requested instructions, so far as the same constituted the law of the case, was embodied by the court in the instructions given.

We find no error in the record, and the judgment below is, therefore,—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.