HAROLD W. WINDRAM *vs.* PETER W. FRENCH & another.

Suffolk.    March 12, 13, 1890. — June 18, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Corporation — False Representations — Invalid Certificates of Stock — Non-assessable — Declaration — Demurrer.*

A declaration disclosing as a whole that it was intended to present a certain case will not be pronounced bad, upon demurrer, for want of technical accuracy of allegation, unless the specific defect is clearly pointed out.

A declaration alleged that the defendants knowingly and fraudulently signed, as president and treasurer, and issued, an invalid certificate of stock reciting that the corporation was "Incorporated under the laws of the State of New Hampshire," and "Non-assessable," and delivered the certificate to enable the raising of money upon it; that the plaintiff in good faith, "relying on the validity of said stock as security," by placing it as collateral, procured and furnished the money, and, upon a failure to repay him, redeemed the pledge and became the owner of the stock. A demurrer set up that it did not appear that any false represen-

tations were made, or, if made, that the plaintiff was deceived by them. *Held*, that the allegations of the declaration imported material misrepresentations of fact, the plaintiff's belief in them, and damage to him, and might be construed, in the absence of more specific statement of grounds of demurrer, to mean that his belief was caused by the misrepresentation.

TORT brought by Harold W. Windram, described in the writ as of Needham, and as having his usual place of business in Boston, against Peter W. French and Emil C. Hammer. The plaintiff's declaration was as follows:

" The plaintiff says that the defendants, with certain other persons, undertook, in December, 1887, to form a company or association under the laws of the State of New Hampshire, to be called the ' Wire Fabric Rubber Company,' and filed in the office of the Secretary of State of said State certain articles of agreement necessary to form such corporation. And the plaintiff further says, that the General Statutes of the State of New Hampshire, chap. 148, sect. 9, provide that ' the shares ' (of any corporation) ' may be numbered, and every stockholder shall have a certificate stating his ownership of the shares named therein, signed by the treasurer and such other officers as the by-laws may prescribe, and any number of shares may be inserted in one certificate ; but no certificate for any share shall be issued until the par value thereof has been fully paid in, unless the amount actually paid in upon such share shall be stated in such certificate'; and that the defendant French, purporting to be the president of said company, and the said Hammer, purporting to be the treasurer of said company, on the first day of February, A. D. 1888, and before said company had complied with the aforesaid requirements of the statutes of New Hampshire necessary to enable it to do business and to issue any stock, and before any capital stock had been paid in to said company, or any amount paid in upon the shares hereinafter mentioned, fraudulently made and signed, as such president and treasurer, and issued, contrary to and in violation of the said laws of the State of New Hampshire, three certificates of stock of such company in the name of one George Meacom, said certificates being numbered 3, 4, and 5, and being severally for one hundred shares, and being dated February 1, 1888 (copies whereof are hereto annexed) ; and the defendants delivered said certificates of said

stock so issued, before the par value or any amount had been paid in upon the same, and contrary to law, to said Meacom, for the purpose of enabling him to raise money in the market on the same, and the said Meacom thereafterward applied to the plaintiff to loan to him, said Meacom, the sum of three hundred dollars on said stock as collateral security for such loan, and the plaintiff, relying on the validity of said stock as security, indorsed the note of said Meacom for said sum of three hundred dollars, and obtained said sum by placing said stock as collateral security for the payment of said amount; and the said Meacom neglected and failed to pay such note, and the plaintiff, as such indorser, was obliged to pay and did pay said note and said sum of three hundred dollars, and redeemed the pledge of said stock, and the plaintiff thereby became the purchaser, holder, and possessor of said three hundred shares of stock, which, the plaintiff avers, was issued by the defendants contrary to said law, and before any amount had been paid in thereon, and which were invalid and of no value; all which was well known to the defendants when they issued such stock."

Annexed to the declaration were the three copies of the certificates referred to therein, all of like tenor, each with the usual form of assignment indorsed thereon, signed in blank by George Meacom.   The certificate numbered 3 was as follows:

"Incorporated under the Laws of the State of New Hampshire.

Non-assessable.

No. 3.

Wire Fabric Rubber Company.     100 shares.

This is to certify that George Meacom is the owner of one hundred shares of the capital stock of the Wire Fabric Rubber Company, transferable on the books of the company in person or by attorney on the surrender of this certificate.

[Seal]   In witness whereof the said Wire Fabric Rubber Company has caused its corporate seal to be hereto affixed, and this certificate to be signed by its President and Treasurer.

Concord, N. H., Feb. 1, 1888.

E. C. Hammer, Treasurer.     P. W. French, President."

The defendants demurred to the declaration, on the ground that it did not set forth a legal cause of action, and "for that no cause of action is therein set forth against the defendants, and for that it does not appear in and by said declaration that the defendants made any false representations to the plaintiff, or that the plaintiff was deceived by any false representations made by the defendants."

The Superior Court sustained the demurrer, and ordered judgment for the defendants; and the plaintiff appealed to this court.

*G. R. Nutter*, (*T. F. Nutter* with him,) for the plaintiff.

*E. W. Hutchins*, for the defendants.

HOLMES, J. It appears from the declaration that the defendants knowingly and fraudulently signed, as president and treasurer respectively, and issued, invalid certificates of stock in a New Hampshire corporation, which were afterwards acquired by the plaintiff in good faith and for value in Massachusetts. The certificates were in the usual form of stock certificates, and bore upon their face the words, " Incorporated under the Laws of the State of New Hampshire. Non-assessable." There is no doubt that by thus authenticating and issuing the certificates the defendants made certain representations which accompanied them, and which, like the offer in a letter of credit, addressed themselves to whoever should purchase those certificates thereafter, wherever he might be. *Bruff* v. *Mali*, 36 N. Y. 200, 205. See *Bartholomew* v. *Bentley*, 15 Ohio, 659; *Clark* v. *Edgar*, 84 Misso. 106; *Bank* v. *Lanier*, 11 Wall. 369, 378; *Matthews* v. *Massachusetts National Bank*, Holmes, C. C. 396; *Lobdell* v. *Baker*, 3 Met. 469, 471.

The scope of these representations is matter of construction. They certainly went to the point that the stock was not spurious, and that it was not invalid by reason of the fraudulent or known acts or omissions of the officers in question. In view of the word " non-assessable," they went further. That word affirmed that such things had been done as were required by New Hampshire law to be done in order to make the stock rightfully exempt from further assessment. This is not the case of an original subscriber, to whom the facts were made known upon which the conclusion that the stock was non-assessable

was based, and who seeks to avoid liability to an assessment, as in *Upton* v. *Tribilcock*, 91 U. S. 45. Here the facts were unknown, and a statement of the conclusion imported a statement that facts existed which justified it, just as when a man states that he owns a thing, or that two persons are husband and wife, or that goods are attached, or that a pauper has a settlement in a certain place. *West Bridgewater* v. *Wareham*, 138 Mass. 305. *Burns* v. *Lane*, 138 Mass. 350, 354. *Rosenberg* v. *Doe*, 148 Mass. 560, 562. See *Eaglesfield* v. *Londonderry*, 4 Ch. D. 693, 703.

The representations thus made by the defendants were false. It is suggested, that unless the plaintiff knew the New Hampshire law, which is not alleged, there was no representation that the stock was paid up. But there was an express representation that somehow or other the stock was non-assessable, and that is enough. For if that does not imply that it was paid up, and if some other mode by which it might become non-assessable can be conceived, the declaration discloses, by reasonable implication, that the only mode in fact under the New Hampshire law was by the par value having been fully paid in. It also alleges that in truth nothing had been paid in, and thus that the representation was false, if the certificate represented stock at all. There is a further allegation that the stock was invalid, by reason, as we understand it, of the defendants' acts and omissions set forth. This, so far as it involves a conclusion of law, is an allegation of New Hampshire law, and therefore of matter of fact which we must take to be true. In this respect, also, the representations imported by the face of the certificate set forth were false.

If, as we must assume, the stock was void, the damage to the plaintiff is apparent. The same would be true if, though not void, it was subject to assessment, although it is not distinctly alleged that the plaintiff believed it to be non-assessable. We need not consider at this stage of the case what his position would be if it should turn out to have been the law of New Hampshire that a *bona fide* purchaser of the stock was entitled to hold it as paid up, so that the stock was not void and was not subject to assessment in the plaintiff's hands, even in favor of the creditors of the company. It would not follow necessarily

that the plaintiff had suffered no damage. In the market, if an attempt were made to sell, the difference might be material between a title based on payment to the company and one based on *bona fides* and the absence of notice, a question of fact liable to be disputed.

We have then fraudulent representations and damage. The weak point in the declaration is in the connection between these two elements. The allegation is, that the plaintiff indorsed, etc., "relying on the validity of said stock as security," but not that he relied on the defendants' representation that it was valid or non-assessable. If the demurrer had pointed out this specific defect, and the plaintiff had not seen fit to amend, it might have been questionable whether the declaration ought to be sustained. But the only ground of demurrer that could be taken to support this objection is, that it does not appear that the plaintiff was deceived by any false representations made by the defendants. This would seem to have been addressed, and to have been understood to be addressed, to a somewhat different point, viz. that the representations on the face of the stock, for one reason or another, did not amount to false representations by the defendants to the plaintiff. We therefore give the plaintiff the benefit of a somewhat liberal construction. When we can gather from the whole declaration that it is intended to present a certain case, we do not pronounce it bad for a want of technical accuracy of allegation, unless the specific defect is unmistakably pointed out.

While it is true that the declaration does not aver, in terms, that the plaintiff relied upon the representations made in the certificate, it does allege that the defendants delivered the stock to Meacom for the purpose of enabling him to raise money upon it, that Meacom applied to the plaintiff to lend him three hundred dollars on the security of the stock, and that the plaintiff, relying on the validity of the stock, etc., indorsed the note of Meacom for three hundred dollars, and obtained that sum " by placing said stock as collateral security for the payment of said amount." These last words import that at the time of the transaction the plaintiff had the certificates, and we think that the declaration may be taken to mean that he knew their purport. We have then the representations which we have recited, made by the

defendants to the plaintiff, and the plaintiff's belief that the facts represented were true. Still, if we were to be very precise, we have not the facts that these representations were the cause of the belief, but as it is not necessary that they should be the sole cause, the declaration may be assumed to mean that they contributed to the result. *Safford* v. *Grout*, 120 Mass. 20, 25. *Matthews* v. *Bliss*, 22 Pick. 48, 53.

In this view it is unnecessary to consider whether the declaration does or does not state a cause of action valid in this Commonwealth, for an omission to give the warning required by the New Hampshire statute to be placed upon the face of the certificates.            *Demurrer overruled.*